**MARK MIGDAL & HAYDEN**
PAUL A. LEVIN (CA State Bar No. 229077)
LAUREN M. GIBBS (CA State Bar No. 251569)
80 SW 8th Street, Suite 1999
Miami, Florida 33130
Telephone:     (305) 374-0440
e-mail:     paul@markmigdal.com
     lauren@markmigdal.com

**FEDERAL DEPOSIT INSURANCE CORPORATION**
JOHN STUART TONKINSON (to seek admission pro hac vice)
3501 Fairfax Drive
Arlington, Virginia 22226
Telephone:     (214) 673-7549
e-mail:     jtonkinson@fdic.gov

Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR WASHINGTON MUTUAL BANK,<br><br>Plaintiff,<br><br>vs.<br><br>PNC BANK, N.A., as successor to NATIONAL CITY BANK and NATIONAL CITY MORTGAGE, A DIVISION OF NATIONAL CITY BANK OF INDIANA,<br><br>Defendant. | Case No. '23CV1470 BEN SBC<br><br>**COMPLAINT FOR CONTRACTUAL INDEMNITY** |

COMPLAINT

# INTRODUCTION

1. Pursuant to a written agreement, National City Mortgage, a division of National City Bank of Indiana ("NCM") brokered mortgage loans for Washington Mutual Bank and/or its subsidiaries, including Long Beach Mortgage Company (collectively, "WaMu"). Defendant PNC Bank, N.A. ("PNC") is the successor to NCM. As part of its agreement, NCM promised to indemnify WaMu for any losses arising out of or related to its alleged acts or omissions.

2. After WaMu funded the loans from NCM, WaMu sold NCM-brokered loans into residential mortgage-backed securitized trusts ("RMBS Trusts") for which Deutsche Bank National Trust Company served as trustee ("Trustee"). The Trustee ultimately asserted claims that it suffered losses because of defective loans sold into the RMBS Trusts, including at least 31 mortgage loans brokered by NCM ("NCM Defective Loans").

3. Plaintiff Federal Deposit Insurance Corporation as Receiver for WaMu ("FDIC-R") incurred losses settling the Trustee's claims. FDIC-R's losses resulted arose out of or related to NCM's acts or omissions, including, among other things, NCM's representation of and assistance to borrowers, and collection, preparation, and submission of loan applications and documentation that misrepresented such things as the borrowers' credit histories, employment status, income, or occupancy status.

4. FDIC-R demanded that PNC honor its written contractual indemnification obligation. Because PNC has not honored its obligations, FDIC-R brings this action as successor to WaMu's rights, titles, powers, and privileges.

2

COMPLAINT

## PARTIES, JURISDICTION, AND VENUE

5. The Federal Deposit Insurance Corporation is an instrumentality of the United States and is organized and exists under the laws of the United States. 12 U.S.C. §§ 1811, 1821(d). Pursuant to 12 U.S.C. § 1821(d)(2), FDIC-R succeeded to all rights, titles, powers, and privileges of WaMu and of any stockholder, member, account holder, depositor, officer, or director of WaMu with respect to the bank and its assets. FDIC-R brings this action in its capacity as the duly appointed receiver of WaMu, which the Office of Thrift Supervision closed on September 25, 2008, appointing FDIC as Receiver for WaMu that same day.

6. PNC is a Pennsylvania-based corporation with branches nationwide, including in this district and division. PNC is registered and licensed to do business in California. NCM merged with and into National City Bank, a national banking association ("NCB"), in July 2006. NCB merged with and into PNC in November 2009. PNC is the legal successor to the indemnification liability of NCB.

7. This Court has subject-matter jurisdiction pursuant to 12 U.S.C. § 1819(b)(1) and (2) and 28 U.S.C. §§ 1331 and 1345.

8. Venue is proper in this district pursuant to 28 U.S.C § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district because, among other things, the contractual business relationship was entered into by WaMu in this district and the place of performance for all or some of the obligations sued upon was in this district.

# FACTUAL ALLEGATIONS

9. WaMu was a federal savings bank that, directly or through affiliates and/or subsidiaries, among other things, purchased, funded, and sold mortgage loans to investment trusts that packaged loans into securities for investors, which are generally known as residential mortgage-backed securities.

10. On information and belief, NCM engaged in the business of brokering, originating, processing, packaging, submitting for funding, selling and/or transferring loans secured by real property.

## A.   NCM's Contractual Obligations

11. NCM and WaMu had a contractual business relationship, governed by the Mortgage Broker Agreement ("MBA") attached hereto as Exhibit 1.

12. NCM agreed that it would prepare, package, and submit loan applications on behalf of loan applicant borrowers seeking WaMu loans. NCM was responsible for, among other things, representing loan applicants in locating lenders; interacting directly with and interviewing the borrower; counseling and assisting the borrower in the financing process; choosing the loan product with the borrower; collecting relevant information and documentation in support of the loan application; preparing the loan application and submission package; and submitting the completed loan package to WaMu.

13. NCM was compensated for any loans funded by WaMu, including the NCM Defective Loans.

14.     Pursuant to the MBA, NCM expressly agreed to indemnify WaMu as follows:

> [NCM] agrees to indemnify, hold harmless, and defend [WaMu] . . . from and against any and all losses, claims, demands, damages, expenses or costs which in any way arise out of or relate to any alleged act or omission of [NCM] . . . in connection with an Applicant, an Application Package, a Mortgage loan, or [NCM]'s activities in connection with this Agreement.

**B.    NCM Defective Loans**

15.     Pursuant to the MBA, NCM brokered the 31 Defective Loans summarized on Exhibit 2, which is incorporated by reference and attached hereto.

16.     As noted above and set forth in more detail below, the Trustee asserted claims against FDIC-R based on alleged breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, including the NCM Defective Loans. Accordingly, FDIC-R incurred losses in connection with the NCM Defective Loans.

17.     NCM prepared and submitted loan applications and documentation for the NCM Defective Loans that contained, among other things, misrepresentations relating to the quality and characteristics of the loans, the borrowers, and the collateral.

18.     As an example, the loan application and documents for borrower MM for two mortgage loans totaling $177,000 in March 2006 contained numerous deficiencies, inaccuracies, and material misrepresentations. NCM prepared and submitted loan application documents for MM that misrepresented her amount of prior debt by failing to include an approximately $278,000 loan on a property that she and her husband owned since 2003 ("MM Property"). Moreover, the loan

application included a false verification of rent from her purported landlord incorrectly stating that she had been renting the MM Property for two years. Indeed, NCM originated MM's mortgage loan secured by the property MM purportedly rented but in fact owned.

19. As another example, NCM prepared and submitted loan application documents for a loan in September 2005 for $100,000 to borrower EK. The loan application purportedly listed the properties that EK owned, and the associated mortgage liabilities EK incurred, but the materials submitted omitted a property and associated mortgage liability originated by NCM for EK. Accordingly, among other things, the loan application misrepresented EK's ability to repay the loan.

20. Taken together, the 31 NCM Defective loans include, among others, loans with undisclosed and/or misrepresented mortgage loan obligations, loans with false or misleading rental histories, loans with false employment histories, loans with inaccurate appraisals, loans with false occupancy representations and certifications; and loans with misrepresented sales transactions.

**C.   WaMu's Sale of the NCM Defective Loans to the RMBS Trusts**

21. After WaMu funded the NCM Defective Loans, WaMu sold each of them to the RMBS Trusts.

22. In connection with such sales, and in reliance on the materials, representations, obligations, and remedies NCM provided, WaMu provided representations, obligations, and remedies to the RMBS Trusts regarding the quality and characteristics of the loans, the borrowers, and the collateral. With respect to defective loans, WaMu was liable to the RMBS Trusts, among other things, where there was a material

6

COMPLAINT

misrepresentation or omission in a loan application or other supporting documentation.

### D. The Trustee Action and FDIC-R's Settlement with Trustee

23. After WaMu failed, on December 30, 2008, the Trustee filed a proof of claim with FDIC-R asserting that WaMu breached representations and warranties in connection with the loans sold to various RMBS Trusts. On August 26, 2009, Trustee filed a lawsuit in the District Court for the District of Columbia against FDIC-R for losses resulting from such loans that WaMu sold to the RMBS Trusts, including the NCM Defective Loans.

24. FDIC-R defended itself against the claims in the Trustee's lawsuit and eventually settled with the Trustee.

25. Pursuant to a settlement agreement with an effective date no earlier than September 5, 2017, FDIC-R and the Trustee settled claims against FDIC-R, including representation and warranty breach claims arising out of or relating to the NCM Defective Loans. On September 5, 2017, FDIC-R paid the $3,006,929,660 Receivership Certificate to the Trustee in settlement of Trustee's claims, including claims on the NCM Defective Loans. Settlement of the Trustee's claims for that court approved amount was objectively reasonable. FDIC-R's indemnification claims are timely because they are brought within six years of the date of accrual. 12 U.S.C. § 1821(d)(14).

26. FDIC-R was liable for the losses due to breaches of WaMu's representations and obligations concerning the quality and characteristics of the loans, the borrowers, and the collateral on certain loans sold into the RMBS Trusts, which loans included the NCM Defective Loans. The Trustee asserted that FDIC-R was contractually responsible for breaches of representations and warranties including, among other things, as a

7

result of misrepresentations, negligence, or fraud in the origination of the loan; appraisals inconsistent with underwriting guidelines; and defaults such as, for example, misrepresentations of income. Given NCM's role and conduct in connection with the NCM Defective Loans, including NCM's relationship to the borrowers and its preparation, gathering, and submission of loan applications and documentation, FDIC-R's liability and loss to the Trustee arose out of or related to NCM's acts or omissions.

**E.     PNB's Breach of the Indemnification Obligations**

27.    On December 28, 2021, FDIC-R sent a demand letter to PNB seeking indemnification for its losses arising out of NCM's and/or related to NCM's acts and omissions in connection with the NCM Defective Loans. PNB has not honored its obligation to indemnify under the MBA.

28.    The MBA provides that the prevailing party in any action to enforce it may recover its reasonable attorneys' fees. In order to enforce FDIC-R's rights under the MBA, FDIC-R has retained outside counsel and agreed to pay reasonable attorneys' fees. In addition, FDIC-R has assigned in-house counsel to assist in actively preparing to bring this case to trial.

29.    All conditions precedent to the relief sought in this action have been fulfilled.

## CLAIM FOR RELIEF

### (Contractual Indemnification)

30.    Plaintiff FDIC-R incorporates by reference the allegations set forth above as though set forth fully herein.

31.    The MBA is a valid and enforceable contract.

32.    Plaintiff substantially performed all its obligations under the MBA.

33.    FDIC-R is entitled to indemnification from PNC for losses and liabilities that FDIC-R suffered settling the Trustee's claims, arising out

of or relating to NCM's alleged acts or omissions, in connection with the NCM Defective Loans.

34. PNC breached its obligations to indemnify FDIC-R, resulting in damage to FDIC-R in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff FDIC-R respectfully requests that it be granted:

    A.    A judgment against PNB in an amount to be proven at trial for its breach of its indemnification obligations;

    B.    Pre-judgment interest under 12 U.S.C. § 1821(l) or applicable state law;

    C.    Reasonable attorneys' fees;

    D.    Costs and expenses; and

    E.    Any other relief as the Court deems just and proper.

DATED: August 10, 2023    MARK MIGDAL & HAYDEN

By:    /s/ Paul A. Levin
Paul A. Levin

DATED: August 10, 2023    FEDERAL DEPOSIT INSURANCE CORPORATION

By:    /s/ J.S. Tonkinson
John Stuart Tonkinson (to seek admission to pro hac vice)

Attorneys for Plaintiff Federal Deposit Insurance Corporation as Receiver for Washington Mutual Bank

COMPLAINT